Slip Op. 07-62

UNITED STATES COURT OF INTERNATIONAL TRADE

```
                               :
-----------------------------  :
TRADEWIND FARMS, INC.,         :
                               :
            Plaintiff,         :
                               :
                               : Before: Richard K. Eaton, Judge
         v.                    :
                               : Court No. 04-00642
UNITED STATES,                 :
                               :
            Defendant.         :
-----------------------------  :
                               :
```

OPINION

[Plaintiff's motion for summary judgment denied.  Defendant's cross-motion for summary judgment granted.  Case dismissed.]

Dated: April 30, 2007

*Hume & Associates, PC* (*Robert T. Hume* and *Akil A. Vohra*), for plaintiff.

*Peter D. Keisler*, Assistant Attorney General; *Barbara S. Williams*, Attorney-in-Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice (*Edward F. Kenny*); *Beth C. Brotman*, Office of the Assistant Chief Counsel, International Trade Litigation, United States Customs and Border Protection, of counsel, for defendant.


Eaton, Judge:  This matter is before the court on plaintiff

Tradewind Farms, Inc.'s ("Tradewind") motion for summary judgment

and the cross-motion for summary judgment of defendant the United

States on behalf of the Bureau of Customs and Border Protection

("Customs").  Each motion is made pursuant to USCIT Rule 56.

By its motion, plaintiff seeks judgment, as a matter of law, that Customs has erroneously classified its merchandise under subheading 3923.10.00 of the Harmonized Tariff Schedule of the United States ("HTSUS")[1] as "[a]rticles for the conveyance or packing of goods, of plastics; stoppers, lids, caps and other closures, of plastics: [b]oxes, cases, crates and similar articles," subject to a 3% tariff *ad valorem*.  Plaintiff asserts that classification of its merchandise is proper under the duty-free HTSUS actual use subheading 9817.00.50 as "implements to be used for agricultural or horticultural purposes."[2]  *See* Mem. P. & A. Supp. Pl.'s Mot. Summ. J. 1 ("Pl.'s Mem.").

By its cross-motion, the United States seeks a judgment sustaining Customs's classification of the merchandise.  *See* Def.'s Mem. Opp'n Pl.'s Mot. Summ. J. & Supp. Def.'s Cross-Mot. Summ. J. 8 ("Def.'s Mem.").

---

[1]     All citations to the HTSUS refer to the 2003 version.

[2]     Plaintiff's complaint initially sought the review of two denied protests, numbers 2704-04-100587 and 2704-04-102812. At oral argument, counsel for plaintiff represented that it would no longer pursue the challenge to protest number 2704-04-100587 for merchandise entered between March 18, 2003, and April 15, 2003.  *See* Pl.'s Mem. Resp. Ct.'s Order (Dec. 5, 2006) (confirming, in writing, that plaintiff no longer sought review of Customs's denial of protest number 2704-04-100587).  Thus, all that remains to be decided is plaintiff's challenge to the denial of its September 29, 2004, protest number 2704-04-102812.

Jurisdiction lies pursuant to 28 U.S.C. § 1581(a) (2000).
Because the court finds that plaintiff failed to satisfy the
notice of intended use requirements found in HTSUS Chapter 98 and
Customs's regulations, it denies plaintiff's motion for summary
judgment.  Additionally, the court finds that the KIT 2000 is
properly classified under HTSUS 3923.10.00; grants defendant's
cross-motion for summary judgment; and dismisses this case.


BACKGROUND

The following facts are not in dispute.  Plaintiff is an
importer of the "Model Kit 2000" ("KIT 2000"), which is a "clear
polyethylene teraphalate . . . clamshell container manufactured
with strategically placed vents, weighing 78 grams and measuring
280mm x 184mm x 130mm" imported from Italy.  Pl.'s Mem. 2; *see
also* Def.'s Resp. Pl.'s Statement Material Facts Not in Issue 2
("DRPF").  A clamshell container "is a container whose top or lid
is attached on one side so that the user can fill the device and
when completed, can flip the top to seal the device."  Pl.'s
Statement Material Facts Not in Dispute 1 ("PSMF"); DRPF 2.

In April and July of 2001, plaintiff self-classified and
entered shipments of the KIT 2000 under HTSUS 9817.00.50 as
implements used for an agricultural or horticultural purpose.
*See* Pl.'s Mem. 17; Def.'s Mem. 24 n.12.  These entries are not

the subject of this action.  Customs disputed plaintiff's 2001
self-classification and found that the KIT 2000 was properly
classified as an article for the conveyance or packing of goods
under HTSUS 3923.10.00.  *See* NY Ruling I89645 (Jan. 6, 2003).
Plaintiff then filed requests with Customs, seeking
reconsideration of its ruling.  Each request resulted in a
written denial.  *See* NY Ruling J83824 (May 7, 2003); *see also* HQ
966955 (Sept. 15, 2004).

    Plaintiff continued to import the KIT 2000, with the subject
entries being made at the port of Los Angeles, California on
September 29, 2003.  *See* Summons of Dec. 14, 2004.  The entry
documents reveal that plaintiff self-classified the September 29,
2003, entries as articles for the conveyance or packing of goods
under HTSUS 3923.10.00.  *See* Def.'s Mem., Ex. 8.  In keeping with
plaintiff's self-classification, Customs, on August 13, 2004,
liquidated the merchandise at the 3% *ad valorem* tariff rate.  *See*
Summons of Dec. 14, 2004.

    Plaintiff timely filed a protest pursuant to 19 U.S.C.
§ 1514(a) (2000) on September 29, 2004.  *See* Summons of Dec. 14,
2004.  Customs denied plaintiff's protest on November 16, 2004.
*See id.*

    The sole substantive dispute in this case is whether the KIT
2000 is actually used for an agricultural or horticultural

purpose and thus may be classified under HTSUS 9817.00.50.  The

primary procedural question is whether plaintiff has demonstrated

that it complied with the law and regulations relating to notice

of the intended use of the merchandise.


## STANDARD OF REVIEW

Under USCIT Rule 56(c), granting summary judgment is proper

"if the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show

that there is no genuine issue as to any material fact and that

the moving party is entitled to a judgment as a matter of law."

USCIT R. 56(c).  "Once it is clear there are no material facts in

dispute, a case is proper for summary adjudication."  *AMKO Int'l,*

*Inc. v. United States*, 22 CIT 1094, 1096, 33 F. Supp. 2d 1104,

1107 (1998).  As this cases hinges on a pure question of law,

summary judgment is appropriate.


## DISCUSSION

I.   Agricultural Actual Use Provision - HTSUS 9817.00.50

     A.   Relevant Law

"The proper classification of merchandise entering the

United States is directed by the General Rules of Interpretation

("GRIs") of the HTSUS and the Additional United States Rules of

Interpretation [("AUSRI")]."[3]  *Orlando Food Corp. v. United States*, 140 F.3d 1437, 1439 (Fed. Cir. 1998).  Under the GRIs:

> Classification of goods in the tariff schedule shall be governed by the following principles:
>
> 1.   The table of contents, alphabetical index, and titles of sections, chapters and sub-chapters are provided for ease of reference only; for legal purposes, classification shall be determined according to the terms of the headings and any relative section or chapter notes . . . .

GRI 1.  In other words, GRI 1 requires the court to "first construe[] the language of the heading, and any section or chapter notes in question, to determine whether the product at issue is classifiable under the heading."  *Orlando Food Corp.*, 140 F.3d at 1440.

Plaintiff's proposed HTSUS subheading is an actual use provision, as it contains the phrase "to be used for."  *See Clarendon Mktg., Inc. v. United States*, 144 F.3d 1464, 1467 (Fed. Cir. 1998) ("The inclusion in this definition of the words 'to be used for' makes classification under the . . . subheading dependent upon the actual use of the merchandise . . . .") (citation omitted).  This subheading is listed under Chapter 98

---

[3]     The Preface to the 15th Edition of the HTSUS states that the GRIs and the AUSRIs are part of the schedule's legal text.

of the HTSUS entitled "Special Classification Provisions."

Pursuant to U.S. Note 1 of HTSUS Chapter 98:

> 1.    The provisions of this chapter are not
>        subject to the rules of relative
>        specificity in general rule of
>        interpretation 3(a).  Any article which
>        is described in any provision in this
>        chapter is classifiable in said
>        provision if the conditions *and
>        requirements thereof and of any
>        applicable regulations are met*.

HTSUS Ch. 98, U.S. Note 1 (emphasis added).  In other words, if

merchandise is actually used for one of the enumerated purposes,

it will be classified under Chapter 98 no matter what its

classification would otherwise be, provided that certain

procedural requirements are met.

Because plaintiff's desired classification is controlled by

the actual use of its merchandise, reference is made to AUSRI

1(b).  This rule governs the interpretation of HTSUS subheadings

controlled by actual use, and states:

> 1.    In the absence of special language or
>        context which otherwise requires . . .
>
>        (b) a tariff classification
>        controlled by the actual use to
>        which the imported goods are
>        put in the United States is
>        satisfied only if such use is
>        intended *at the time of
>        importation,* the goods are so
>        used and proof thereof is
>        furnished within 3 years after
>        the date the goods are entered.

AUSRI 1(b) (emphasis added).  Thus, if it hopes to succeed,

plaintiff must establish that it has satisfied the additional

requirements articulated in AUSRI 1(b), particularly the

requirement that the actual use is intended at the time of

importation.

        By its regulations, Customs, in accordance with AUSRI 1(b),

provides for a three-part test:

> When the tariff classification of any article
> is controlled by its actual use in the United
> States, three conditions must be met in order
> to qualify for free entry or a lower rate of
> duty unless the language of the particular
> subheading of the [HTSUS] applicable to the
> merchandise specifies other conditions.  The
> conditions are that:
>
> > (a) Such use is intended at the
> > time of importation.
> >
> > (b) The article is so used.
> >
> > (c) Proof of use is furnished
> > within 3 years after the date the
> > article is entered or withdrawn
> > from warehouse for consumption.

19 C.F.R. § 10.133 (2003).  Again, of importance here is the

requirement that the intention to use the merchandise for a

particular purpose be present at the time of entry.

        By regulation, Customs has set out the procedures with which

an importer must comply in order to demonstrate the intended use

of its merchandise.  Pursuant to the regulation, an importer

must, at the time of entry:

> fil[e] with the entry for consumption or for
> warehouse a declaration as to the intended
> use of the merchandise, or . . . enter[][4] the
> proper subheading of an actual use provision
> of the [HTSUS] and the reduced or free rate
> of duty on the entry form.  Entry made under
> an actual use provision of the HTSUS may be
> construed as a declaration that the
> merchandise is entered to be used for the
> purpose stated in the HTSUS, provided that
> the port director is satisfied the
> merchandise will be so used.  However, the
> port director shall require a written
> declaration to be filed if he is not
> satisfied that merchandise entered under an
> actual use provision will be used for the
> purposes stated in the HTSUS.

19 C.F.R. § 10.134.  Thus, under this regulation it is not

sufficient that an importer intend a particular use for its

merchandise, it must demonstrate that intention at the time of

entry by following specific procedures.


B.   Compliance with Actual Use Regulations

Plaintiff contends that its protest of Customs's

classification decision regarding the KIT 2000 satisfied the

requirements of the actual use regulations set forth in 19 C.F.R.

---

[4]     It is worth noting that the regulation is in the
alternative.  Thus, if plaintiff believed that, because of
Customs's ruling letter, it was required to self-classify its
merchandise under HTSUS 3923.10.00, it could still have complied
with the regulation by filing a declaration of intended use at
the time of importation.

§§ 10.131–.138.  *See* Pl.'s Mem. Resp. Def.'s Cross-Mot. Summ. J.
8 ("Tradewind Farms has always intended that the entries should
properly be entered under 9817.00.50 and has demonstrated this
through its protests . . . .").  Tradewind takes this position
even though it is undisputed that: (1) it did not file a
declaration of intended use when it entered the subject
merchandise under HTSUS 3923.10.00 as "[a]rticles for the
conveyance or packing of goods, of plastics; stoppers, lids, caps
and other closures, of plastics: [b]oxes, cases, crates and
similar articles"; and (2) it did not enter the KIT 2000 under an
actual use provision.  *See* Pl.'s Mem. 17–18; Def.'s Mem. 23–24.

In other words, plaintiff insists that, while it neither
filed a declaration of intended use nor entered its merchandise
under an actual use provision, its protest of Customs's
classification of its merchandise evidenced its intention to
actually use the KIT 2000 for an agricultural or horticultural
purpose.  Therefore, plaintiff appears to ask the court to find
that Customs erred by refusing to acknowledge the protest as
satisfying the declaration of intended use requirement contained
within 19 C.F.R. § 10.134.[5]

---

[5]     Plaintiff, however, makes no claim that the regulations
are an invalid interpretation of the HTSUS.

Defendant maintains that plaintiff failed to satisfy 19
C.F.R. § 10.134 because it "classified the merchandise comprising
the entries listed in the summons for this matter, under HTSUS
Chapter 39 (Plastics and Articles Thereof) and not pursuant to
any actual use provision."  Def.'s Mem. 23-24 (footnote &
emphasis omitted).  As a result, Customs argues that plaintiff
was required to file "with each entry at issue in this case a
declaration of intended use of the merchandise," and did not do
so.  Def.'s Mem. 24.  Put another way, Customs claims that
plaintiff's failure to file a declaration of intended use or to
enter its merchandise under the agricultural actual use provision
"is clearly fatal to its claim."  Def.'s Mem. 12.

When faced with a challenge to the interpretation of a
regulation, "[a]s a general rule, [the court] must defer to an
agency's interpretations of the regulations it promulgates, as
long as . . . the agency's interpretation is neither plainly
erroneous nor inconsistent with the regulation." *Gose v. U.S.
Postal Serv.*, 451 F.3d 831, 836 (Fed. Cir. 2006); *see also Auer
v. Robbins*, 519 U.S. 452, 461 (1997).  That is, the court "must
defer to [Customs's] interpretation unless an 'alternative
reading is compelled by the regulation's plain language or by
other indications of [Customs's] intent at the time of the
regulation's promulgation.'"  *Thomas Jefferson Univ. v. Shalala*,

512 U.S. 504, 512 (1994) (quoting *Gardebring v. Jenkins*, 485 U.S.
415, 430 (1988)).

The court cannot find in the language of the regulations any
indication that Customs intended that the filing of a protest
could be substituted for the specific notice procedures contained
therein.  Nor can it elsewhere find any indication that such was
Customs's intent.  Under the regulations, an importer may satisfy
the requirement of notice of intended use in one of two ways:
first, by filing a separate declaration of intent with the agency
at the time it imports its merchandise; or second, the importer
may enter its merchandise pursuant to the actual provision.[6]

---

[6]     Even the second option, however, may result in the port
director requesting a written declaration.  *See J.E. Bernard &
Co., Inc. v. United States*, 80 Cust. Ct. 111, 122 (1978).  The
Customs Court in *J.E. Bernard & Co.* held than an importer may be
required to provide a written declaration of intended use even
absent a port director's request.  *See J.E. Bernard & Co.*, 80
Cust. Ct. at 122.  In that case, the importer entered its goods
under an actual use provision of the Tariff Schedule of the
United States ("TSUS"), the predecessor statute to the HTSUS.
Customs denied entry to the goods under the importer's proposed
provision.  The importer presented its entry documents containing
Customs's denial of entry as evidence that it made known its
intent of actual use at the time the merchandise was entered.
Finding that evidence insufficient, the Customs Court stated:

>          [T]he entry . . . does have a rejected entry
>          attached to the entry papers indicating
>          plaintiff's intent to have the merchandise
>          entered duty free . . . .  However,
>          regulation 10.134 explicitly states that the
>          district director shall require a written

(continued...)

Whichever option an importer chooses, the action must be made at
the time of entry.  Thus, it is clear from the text of the
regulations that: (1) Customs intended that there be two forms of
notice of the intention to use merchandise for the purpose set
forth in plaintiff's proffered HTSUS subheading; and (2) that
this actual notice be given at the time of importation.

    It therefore cannot be found that plaintiff's protest
satisfied the regulations.  Here, the importer did not enter the
KIT 2000 under an actual use provision or make a written
declaration.  Thus, plaintiff performed neither of the specific
acts set out in the regulation.  In addition, the law and the
regulations make clear that the importer must have the intention

---

[6](...continued)
          declaration of intent to be filed if he is
          not satisfied that merchandise entered under
          an actual provision will be used for the
          purposes stated in the tariff schedules.
          Since the district director apparently
          rejected the entry under [the actual use
          provision], it was incumbent upon plaintiff
          to file a written declaration of intent
          pursuant to regulation 10.134.  And since
          plaintiff failed to file such a declaration,
          Customs again was not required to suspend
          liquidation.

*Id.*  The Customs Court analyzed the sufficiency of the importer's
notice in accordance with the 1971 version of 19 C.F.R. § 10.134.
*See id.* at 121.  The 1971 regulation is virtually identical to
the 2003 version, the only difference being Customs's reference
to the then-in-force tariff schedule.

to use its merchandise for a particular actual use at the time of entry.  A protest filed one year after entry is simply not evidence of the presence of the necessary intention at the time of entry.

As a result, because plaintiff has failed to satisfy the threshold procedural requirement for classification of its merchandise under HTSUS 9817.00.50, the court denies its motion for summary judgment.[7]


II.  Proper Classification Under HTSUS 3923.10.00

Having found that plaintiff did not follow the procedures that would allow classification of its merchandise under HTSUS 9817.00.50., the court now turns to Customs's classification of the merchandise under HTSUS 3923.10.00 as "[a]rticles for the conveyance or packing of goods, of plastics . . .: [b]oxes, cases, crates and similar articles."  Customs's classification is entitled to a statutory presumption of correctness.  *See* 28 U.S.C. § 2639(a)(1).  As a result, for the court to grant an importer's request to classify its merchandise under a different HTSUS subheading than that prescribed by Customs, the importer

---

[7]     Because plaintiff failed to comply with the actual use regulations, the court declines to address the question of whether the KIT 2000 serves an agricultural or horticultural purpose.

Court No. 04-00642                                          Page  15

must satisfy its "burden of proving that the [government's]
classification is incorrect."  *Jarvis Clark Co. v. United States*,
733 F.2d 873, 876 (Fed. Cir. 1984).  Here, plaintiff has not
satisfied that burden of proof.  In addition, Tradewind does not
dispute that, if its merchandise is not entitled to
classification under the actual use provision, HTSUS 3923.10.00
is the proper classification for the KIT 2000.  *See* Pl.'s Resp.
DRPF 3 ("Admits that the primary classification for the imported
clamshell merchandise also known as the KIT 2000 is 3923.10.00
HTSUS . . . .").  As a result, the court sustains Customs's
classification and grants defendant's cross-motion for summary
judgment.


                              CONCLUSION

     Based on the foregoing, the court denies plaintiff's motion
for summary judgment; grants defendant's cross-motion for summary
judgment; and dismisses this case.  Judgment shall be entered
accordingly.


                                      /s/Richard K. Eaton
                                      Richard K. Eaton


Dated: April 30, 2007
       New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE

```
                                  :
TRADEWIND FARMS, INC.,            :
                                  :
               Plaintiff,         :
                                  : Before: Richard K. Eaton, Judge
          v.                      :
                                  : Court No. 04-00642
UNITED STATES,                    :
                                  :
               Defendant.         :
                                  :
```

JUDGMENT

This case having been duly submitted for decision; and the court, after due deliberation, having rendered a decision herein; Now therefore, in conformity with said decision, it is hereby

ORDERED that plaintiff's motion for summary judgment is denied;

ORDERED that defendant's motion for summary judgment is granted; and it is further hereby

ORDERED that this case is dismissed.


                                    /s/Richard K. Eaton
                                    Richard K. Eaton

Dated: April 30, 2007
       New York, New York

# NOTICE OF ENTRY AND SERVICE

This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

or

Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

Tina Potuto Kimble
Clerk of the Court

Date: _____     By: _____
                                              Deputy Clerk